IN THE UNITED STATES

COURT OF APPEALS

FIFTH CIRCUIT

YOLANDA SALDIVAR                    §
                                    §
        Petitioner                  §
                                    §
v.                                  §        Cause No.:_____
                                    §
MR. MONROE                          §
                                    §
        Director, Texas Department  §
                                    §
        of Criminal Justice         §


### MOTION FOR LEAVE OF COURT TO FILE

### AN APPLICATION FOR A CERTIFICATE OF APPEALABILITY

### PURSUANT TO 28 U.S.C. §2253(c)(2)


Now comes, Yolanda Saldivar, a prisoner under the custody
of the Texas Department of Criminal Justice, #733126, and files
this instant motion to file an application for a certificate
of appealability pursuant to 28 U.S.C. §2253(c)(2) requesting
authorization to file in the District Court a second or
successive 28 U.S.C. §2254 application for a Writ of Habeas
Corpus challenging her 1995 conviction and life sentence for
First Degree Murder.  The claims that the Petitioner raises could
not have been raised in a previous §2254 application because
of the recent revelations of newly discovered exculpatory
material evidence made by the prosecutor.  The Petitioner's
defense relied on the State to produce all and any EXCULPATORY
MATERIAL EVIDENCE against the Petitioner after the defense filed

"pretrial Motions for Discovery and Inspection and Motion to

produce EXCULPATORY AND MITIGATING EVIDENCE".  Unbeknownst to

the Petitioner and the defense, she became aware on "MARCH 16,

2018" that the prosecutor and District Attorney, Mr. Carlos

Valdez, who prosecuted the Petitioner, presented and revealed

withheld EXCULPATORY PHYSICAL MATERIAL EVIDENCE to the media

and the public but deliberately kept that very evidence from

the jury and the defense during the trial.  According to the

State's exhibit index, this exculpatory material evidence was

NOT part of the evidence introduced for the jury and was NEVER

placed before the jury.  Mr. Valdez, violates a second time the

BRADY rule to disclose .  This prosecutorial misconduct was part

of a larger pattern of discrimination aimed at hiding evidence.

This is not justice in America when a prosecutor pretextually

violates the Petitioner's constitutional rights.  This pervasive

systematic misconduct of the prosecutor should not and must not

be accepted in our society.  The Courts should look on the

complexity of this whole situation and the over all totality

of the circumstances surrounding the misconduct of the prosecutor.

The Petitioner believes that based on the conflicting evidence

and the withholding of exculpatory evidence, the jury could have

reasonably rejected or accepted the defense claim of an accidental

shooting but that was not possible when the prosecutor not only

withholds impeachment evidence but recently revealed exculpatory

material evidence.  It is the State that holds the burden of proof

for conviction.  To withhold favorable exculpatory physical

material evidence from the jury who was the trier of fact was

-2-

and is egregious, contemptible, illegal and unconstitutional. For 23 years, the prosecutor withheld this evidence and when convenient presents it to an entity that would not determine between the guilt and innocence of the Petitioner, between freedom and life in prison and between what is morally, legally, and ethically acceptable in a court of law.

## PROCEDURAL HISTORY

The Petitioner was charged, indicted and convicted of First Degree Murder and sentenced to life in prison. Motion for a New Trial was filed and denied. After Notice of Appeal, the Petitioner filed a Direct Appeal to the 14th Court of Appeals, No. 14-96-10-CR. On October, 1998, the conviction and sentenced was affirmed. On March, 1999, a Petition for Discretionary Review was filed and denied on September, 1999. On September 26, 2000, the Petitioner's attorney filed an Original State Writ of Habeas Corpus in the WRONG CONVICTING COURT. Due to a change of venue from the 214th to the 228th District Court, the Writ should have been filed in Houston and not in Corpus Christi. On December, 2000, the Writ was dismissed by the convicting court. The Statute of limitations to file a Federal Writ had expired pursuant to 28 U.S.C. §2244(d)(1)(A).

## LEGAL BASIS

Pursuant to the Anti-Effective Death Penalty Act, Petitioner requests the Court of Appeals for a certificate of appealability to file a §2254 Federal Writ of Habeas Corpus alleging that the District Court dismissed Petitioner's Motion for a certificate of appealability for lack of jurisdiction and a State's Court

-3-

determination <u>dismissing</u> Petitioner's 2019 State Writ of Habeas

Corpus of a factual issue of denial of her constitutional rights:

(1) Whether the State Court erred in dismissing the Petitioner's raised claim of the prosecutor purposefully withholding EXCULPATORY PHYSICAL MATERIAL EVIDENCE for 23 years where he claims is proof the Petitioner "INTENDED" to harm the victim, evidence not presented to the jury at the time of the trial;

(2) Whether the State Court erred in failing to conduct a <u>SUA SPONTE</u> evidentiary hearing regarding evidence that was "<u>KNOWN</u>" but not <u>ADMITTED</u> as evidence to the jury who was the trier of fact;

(3) Whether the State Court erred in not ruling whether the withheld physical material evidence was material and favorable to the Petitioner;

(4) Whether the State Court erred finding that the Petitioner's Due Process Clause of the 5th Amendment, Effective Assistance of Counsel of the 6th Amendment, and Equal Protections of the Law of the 14th Amendment rights were not violated by the prosecutor when he deliberately withheld exculpatory physical material evidence; and

(5) Whether the State Court erred in dismissing Petitioner's constitutional claims by not adjudicating on the merits but by a plain procedural bar to dispose of the case.

28 U.S.C. §2244(b)(2) states:

"A claim presented in a second or successive habeas corpus application under §2254 that was <u>NOT</u> presented in a prior application shall be dismissed unless:

(A) The Applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable; or

(B)(i) The factual predicate for the claim could not have been discovered previously through the exercise of due diligence and the facts underlying the claim, if proven by clear and convincing evidence, would be sufficient to establish that, but for constitutional error, a reasonable trier of fact would not find Applicant guilty of the underlying offense".

Permission may be granted to a habeas Petitioner that his

or her case is appealable from a lower court because the Petitioner

has made a substantial showing that a "constitutional right"

has been denied pursuant to 28 U.S.C. §2253(c)(2). **Miller-El v. Johnson**, 261 F.3d 445, 449 (2001). When he demonstrates that his petition involves issues which are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are adequate to deserve encouragement to proceed further. **Id**. at 449. The prisoner does not have to show that the case would succeed on the merits, only that reasonable jurists would find the claim at least debatable. **Miller-El v. Cockrell**, 537 U.S. 322, 377, 123 S.Ct. 1029, 1039 (2003).

### PRIMA FACIE SHOWING

The Petitioner makes a prima facie showing of actual innocence of the underlying offense when the establishment of a legally required rebuttable presumption based on what can be shown to be true on first examination subject to further evidence or information, of withheld exculpatory physical material evidence favorable to the Petitioner enough to allow the fact-trier to infer the fact of issue and rule in the Petitioner's favor.

### Legal Sufficiency

The Petitioner contends that the evidence is not legally to support her conviction for murder. Specifically, she argues that the evidence does not prove that the Petitioner "INTENDED" to shoot the victim.

### Standard of Review

Under the Standard of Review for legal sufficiency challenges, the evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable

to the verdict, no rational fact-finder could have found that [EACH ESSENTIAL ELEMENT] of the charged offense was proven beyond a reasonable doubt. **Jackson v. Virginia**, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed. 2d 560 (1979); **Laster v. State**, 275 S.W. 3d 512, 517 (Tex.Crim.App. 2009).

Murder is a "RESULT-OF-CONDUCT" crime, which the Penal Code defines in terms of the result of the perpetrator's actions. **Young v. State**, 341 S.W. 3d 417, 423 (Tex.Crim.App. 2011). A person commits murder by:

> (1) Intentionally or knowingly causing the death of an individual; or
> (2) With intent to cause serious bodily injury, committing an act clearly dangerous to human life that causes the death of an individual.
> (Texas Penal Code Ann §19.02)

A person acts [intentionally] with respect to his conduct when it is his [objective] to cause the prohibited result, and a person acts knowingly with respect to his conduct when he is [aware] that his conduct is reasonably likely to cause the prohibited result. **Id**. at §6.03(a)(b).

The Petitioner does not contend that the record lacks sufficient evidence to show that the firearm introduced at trial was found to have been FIRED ONCE. Rather, the Petitioner contends that there is no evidence to support that she "INTENDED" to shoot the victim. The Petitioner did not possess the objectivity to cause the direct, indirect or otherwise knowingly the death of the victim contrary to the State's subjectivity of unfounded and uncorroborated evidence for its burden of proof of the required ELEMENT of "INTENT".

Substantial Showing

The Petitioner makes the substantial showing by providing the nexus between what was introduced as evidence to the jury and what was [WITHHELD] from them that could have helped not only the defense but the jury as well to determined what was true and what was false.

The Petitioner was convicted of First Degree Murder. The Petitioner's defense claimed and contended a defense of accident. The 14th Court of Appeals stated in their "OPINION" the following in **Saldivar v. State**, 980 S.W. 2d 475:

> "...Appellant shot Complainant, Selena Quintanilla Perez, in the back [AS COMPLAINANT WALKED TOWARD THE DOOR OF APPELLANT'S ROOM] at the Corpus Christi Inn. Complainant "RAN" FROM the room toward the lobby of the motel, screaming. Appellant "FOLLOWED" her in armed pursuit..." (Emphasis Petitioner)

With the 14th Court of Appeals "OPINION" that the victim "was shot...as Complainant WALKED TOWARD THE DOOR of Appellant's room..." adds SUPPORT AND CREDANCE to the Petitioner's defense of accident. And this is why. It is clear that the victim was INSIDE of Petitioner's room indicating the shooting happen INSIDE not OUTSIDE. The medical examiner concluded in his autopsy report that the victim was shot at close range, not long range as if someone was far away from them wanting to shoot that person. The motel room was approximately 12X12 in diameter according to the prosecution's measurements. This is more indication that the shooting happen INSIDE THE ROOM which would support the medical examiner's conclusion of close range. The evidence and the record will show that the State presented NO witnesses who

testified that they had witnessed the Petitioner INTENTIONALLY
SHOOTING THE VICTIM INSIDE the room.  The State charted the
path they claimed the victim "RAN" from the door of Petitioner's
door room AFTER THE SHOOTING, around the poolside, around the
building to the entrance of the front lobby where the victim
collapsed.  The State estimated the distance that the victim
"RAN" was 390 feet (130 yards).  The State claimed the Petitioner
"FOLLOWED" the victim.  The State DID NOT estimate the distance
the Petitioner supposedly "FOLLOWED" the victim.  The medical
examiner also concluded in his autopsy report that the victim
had suffered a right perforated subclavian artery injury which
was hemorrhaging.  This is an extremely important [objective]
exhibited by the victim for it is the prosecutor's claim that
the victim's "EXERTION" episode is what killed her during his
media interview.  This hemorrhaging that the victim had, surely
was spilling into her clothing including those "TENNIS SHOES"
that the prosecutor WITHHELD from the jury.

The 14th Court of Appeals also ruled further in the
Petitioner's point of view contending the prosecutor, Mr. Carlos
Valdez, in **Saldivar v. State**, 980 S.W. 2d 475, "WITHHELD EVIDENCE"
from the Petitioner when it ruled:

> "The record reflects the prosecutor did not deliberately
> withheld impeachment evidence from Appellant.  Yet, the
> record also reflects the State made little effort to
> discover the information which IT POSSESSED IN IT'S OWN
> RECORDS.  Therefore, we find the State breached its
> affirmative duty to disclose impeachment evidence to
> which Appellant was entitled".  Id. at 486 (Emphasis
> Petitioner)

> If the prosecutor did not deliberately withheld impeachment

evidence, what would a Court decide to call withholding
exculpatory material evidence for 23 years if not "deliberate"?
The State may not have had any use of this impeachment evidence
for why they held it.  Nevertheless, the 14th Court of Appeals
did not excused their indiscretion of violating the BRAADY rule.
Fast forward now to "MARCH 16, 2018", this same prosecutor
unveals and presents to the media and the public NEWLY DISCOVERED
EXCULPATORY MATERIAL EVIDENCE (NEW in the sense that it was not
introduced as evidence to the jury who was the trier-of-fact),
a pair of "WHITE REEBOK HIGH TOP TENNIS SHOES AND A BLACK BASEBALL
CAP", that he deliberately withheld from the jury and the defense.
The 14th Court of Appeals stated that the withheld impeachment
evidence was "immaterial" and "harmless error".  However, this
NEWLY DISCOVERED EVIDENCE is material and was harmful to the
defense because the defense was not able to represent accurately
the misguided view the State was presenting the evidence of what
actually took place.  It is the State's burden to prove to the
jury that the Petitioner is guilty of the charge of murder in
the indictment with all the evidence tending to prove that guilt.
But not by deliberately infringing upon Petitioner's 5th, 6th,
and 14th constitutional amendment rights by withholding both
impeachment and exculpatory evidence.  This is a gross practice
of prosecuting a criminal case.  It was the jury who and DID
determined the acquittal or conviction of the Petitioner with
what they had as evidence.  There was a deliberate consciousness
to disregard the Petitioner's rights.

The Petitioner stresses the IMPORTANCE this NEWLY DISCOVERED

<u>EXCULPATORY MATERIAL EVIDENCE</u> of the "<u>**TENNIS SHOES**</u>" were for
the Petitioner's defense whether or not the entire evidence
prove the Petitioner's culpability.  The State claimed that the
victim "<u>**RAN**</u>".  The victim obviously had shoes on, as did the
Petitioner.  In the prosecutor's media·inteview on March 16,
2018·he stressed and claimed that these "<u>**TENNIS SHOES**</u>" belonged
to the <u>PETITIONER</u> who had stepped on the victim's blood as
Petitioner had "<u>**FOLLOWED**</u>" the victim.  For argument's sake and
going with the prosecutor's media revelations, if this is and
was true, that the "<u>**TENNIS SHOES**</u>" belonged to the Petitioner,
its inconceivable that a prosecutor **WOULD NOT** have tendered these
"<u>**TENNIS SHOES**</u>" to the jury to prove the element of "<u>**INTENT**</u>" that
would have solidified a sure conviction against the Petitioner.
Any prosecutor would have presented damaging evidence to a jury
to convict her, would it not?  This prosecutor instead did the
opposite, he withheld this crucial material evidence.  The question
is why?  The answer is obvious.  The defense could have discredited
the evidence and contended that (1) the "<u>**TENNIS SHOES**</u>" did not
belonged to the Petitioner, (2) that absent of any evidence tending
to prove "INTENT" would have had to be entertained by the jury,
(3) the Petitioner had not "<u>**FOLLOWED**</u>" the victim, and (4) it
would have helped the defense to possibly obtained an acquittal
for the Petitioner.

It is evident that the shooting took place <u>INSIDE</u> the room
of the motel.  The State presented no eyewitnesses who testified
they witnessed the Petitioner <u>INTENTIONALLY</u> shooting the victim
<u>INSIDE</u> or <u>OUTSIDE</u>·the motel.  One State main witness, Norma Marie

Martinez, recanted her police statement during her testimony
at trial where she admitted she had lied to the police when
she stated that she had seen the Petitioner shoot the victim.
Another state witness, Rosario Garza, gave a police statement
stating that she had heard two big bangs.  The weapon introduced
at trial was found to have been fired ONLY ONCE.  For some reason
or another, this witness was not called to testify at trial.

Another aspect of this whole complexity, is the introduction
of the other clothing belonging to the victim (i.e. bra, panties,
green sweat pants) to the jury.  BUT why the exclusion of the
victim's "TENNIS SHOES AND BASEBALL CAP"?  There was an
affirmative action to suppress this material evidence.  These
"TENNIS SHOES" were relevant evidence and were probative as it
was part of the victim's clothing.  They were inextricably
intertwined with the rest of the evidence.  Because the State
claimed that the victm "RAN" and that the Petitioner "FOLLOWED"
her, the jury WAS NOT allowed to make a final determination of
what role these "TENNIS SHOES" had or played in the commission
of the death of the victim.  Instead, the State's prosecutor
withheld this exculpatory evidence for the deliberate purpose
to conceal evidence from the jury and after 23 years, unshamely
presents them to the media and the public in a deceitful manner
after the fact that the State got its conviction irregardless
if the law was followed and/or if they violated the Petitioner's
constitutional rights.  The prosecutor's actions are inexcusable.
The prosecutor had two choices to make, present those tennis
shoes or not.  He chose not to which violated Petitioner's rights.

When the Petitioner was arrested and booked into the Nueces County Jail, she was stripped searched and her clothing (i.e. green hospital scrubs and HIGH ANKLE BEIGE BOOTS) were confiscated. These were not part of the evidence introduced at trial. Again, why were these BOOTS not made part of the evidence introduced at trial to the jury? On the other hand, what was introduced at trial was Petitioner's other clothing found in the motel room (i.e. brown pants, panties, blouse). It is hard to understand that the "TENNIS SHOES" of the victim and/or the BOOTS of the Petitioner WERE NOT made part of the evidence to the jury. Because the State claimed and the 14th Court of Appeals "OPINIONED" that the victim "RAN" and that the Petitioner "FOLLOWED" the victim in armed pursuit, its unfathomable to think that either footwear WOULD NOT have been placed before the jury to determine whether or not there appears blood at the bottom of the soles of either footwear. According to photos of the sidewalk and of the trial of blood the victim left behind which the state measured and introduced at trial, if either one (the victim or the Petitioner) would have stepped on that blood, these footwear could have proven if indeed the victim "RAN" and the Petitioner "FOLLOWED" her. The State does not adequately predicate the withholding of this exculpatory material evidence of the footwear. Rather, in the State's answer to the Petitioner's State Writ of Habeas Corpus in May, 2019, it stated, "In reality, the State did not use those shoes to prove intent or any other theory...the shoes are immaterial". (SEE EXHIBIT A-copy of the State's answer page 4).

The State Court of Criminal Appeals by dismissing the Petitioner's
Writ of Habeas Corpus did not adjudicate on the merits of the
claims Petitioner set forth but rather rushed to dispose the
case.  The Court of Criminal Appeals dismissed the fact that
it was the State's prosecutor in his answer to Petitioner's Writ
who determined the materiality of the "TENNIS SHOES" not the
state court.  This is an error by the State court.  This violated
Petitioner's substantive right to exculpatory evidence.  "[B]ad
faith entails some sort of improper motive, such as personal
animus against the defendant or a desire to prevent the defendant
from obtaining evidence that might be useful".  **EXPARTE NAPPER**,
322 S.W. 3d 202, 238 (Tx.Crim.App. 2010).  Certainly, there is
animus against the Petitioner when the prosecutor deliberately
withholds useful exculpatory evidence and when challenged in
an court filing, the court moves quickly to dismiss the case
without any proceedings or written order.  The lady justice is
blind for a reason so that equal justice applies to the merits
of a complaint.  In the Petitioner's case, justice is NOT equal,
fair, impartial or proper.  Rather, its a rush to judgment without
any adjudication whatsoever.  A gross miscarriage of justice.
This prosecutor practiced prosecutorial misconduct for a second
time in withholding useful exculpatory evidence demonstrating
animus against the Petitioner and with the full weight of the
public and media against the Petitioner, took advantage in bad
faith to conduct an illegal prosecution.  For the prosecution
to state that the "TENNIS SHOES" WERE NOT USED to prove intent,
therefore, considered them immaterial, they also DID NOT USE

the impeachment evidence to meet their burden of proof. Yet,
the 14th Court of Appeals ruled that the prosecutor breached
its affirmative duty to disclose. It was the 14th Court of
Appeals that determined the MATERIALITY of the impeachment
evidence, not the prosecutor. The prosecutor cannot stand as
a judge and prosecutor in a case at the same time.

Material evidence is that quality of evidence which tends
to influence the trier-of-fact because of its logical connection
with the issue, evidence which is material to question in
controversy, and which much necessarily enter into the consideration
of the controversy, and which by itself or in connection with
other evidence is determinative of the case. **Camurati v. Sutton**,
54, 342 S.W. 2d 732, 739. The Petitioner argues that the
prosecutor DID NOT ALLOW the jury to perform its duty to determine
or connect the relevancy of the "TENNIS SHOES" to the case.

### ARGUMENTS AND AUTHORITIES

The Due Process Clause of the 14th Amendment requires
disclosure even without a request for **BRADY** evidence, i.e. material
evidence favorable to the accused. **Kyles v. Whitley**, 514 U.S.
419, 433 (1995); **Brady v. Maryland**, 373 U.S. 83 (1963). Exculpatory
evidence for purposes of BRADY is evidence that may justify,
excuse, or clear the defendant fault, while impeaching evidence
is that which dispates or ocntradicts other evidence. **Harm v.**
**State**, 183 S.W. 3d 403; **Thomas v. State**, 841 S.W. 2d 399. When
the Petitioner claims that the prosecution suppressed exculpatory
evidence and thereby violated her right to Due Process, [the]
Petitioner must satisfy a three-pronged test. Petitioner must

first show that the State failed to disclose evidence, regardless of the prosecution's good or bad faith. He must then show that the withheld evidence is favorable to the Petitioner. Finally, the Petitioner must show that the evidence is material, that is, there is a reasonable probability that had the evidence been discovered, the outcome of the trial would have been different. **Exparte Richardson**, 70 S.W. 3d at 870. There is indisputable evidence that the State suppressed and withheld exculpatory material evidence of the "TENNIS SHOES" from the defense and the jury by its admission to the Petitioner's State Writ of Habeas Corpus stating that the "TENNIS SHOES" were "KNOWN" and not used by the State to meet its burden of proof. These "TENNIS SHOES" are favorable to the defense for they are the nexus to bring about whether or not the element of "INTENT" was proven beyond a reasonable doubt. The defense could have used every and any one piece of evidence for a breakthrough. Not one single piece tells the whole story but put together with other pieces, the story can turnover the right story. Evidence is favorable if, when disclosed and used effectively, it may make the difference between conviction and acquittal. **Bagley**, 473 U.S. at 676; **Exparte Mitchell**, 853 S.W. 2d 1, 4 (Tx.Cr.App. 1993). The defense was not allowed to use this suppressed evidence effectively or any other way. Finally, there is a reasonable probability that had the evidence been discovered or introduced to the jury, the defense could have effectively argued and be successful that the element of "INTENT" was missing the action by the Petitioner. Furthermore, what the evidence of the shoes could have provided

if the Petitioner "<u>FOLLOWED</u>" the victim.

The prosecutor had this exculpatory material evidence in its possession prior and during the trial which he <u>DENIED AND KEPT FROM THE JURY</u>. He had the "AFFIRMATIVE DUTY" to disclose this exculpatory material evidence. When the Court of Appeals ruled in **<u>Saldivar v. State</u>**, 980 S.W. 2d 475 that the prosecutor "<u>DID NOT DELIBERATELY</u>" withheld impeachment evidence but "<u>MADE LITTLE EFFORT TO DISCOVER THE INFORMATION</u>" which it "<u>POSSESSED IN ITS OWN RECORDS</u>" and "<u>BREACHED ITS DUTY TO DISCLOSE IMPEACHMENT EVIDENCE TO WHICH APPELLANT WAS ENTITLED</u>", it can be reasonably said that the prosecutor had and has <u>DELIBERATELY</u> and willfully withheld <u>EXCULPATORY MATERIAL EVIDENCE</u> which <u>HE POSSESSED</u> and made no efforts to reveal that evidence to which the Petitioner was entitled, to the jury who was the trier-of-fact during the trial.

The Petitioner satisfied the three-pronged test in **<u>EXPARTE RICHARDSON</u>**, 70 S.W. 3d at 870:

    (1)  The prosecutor reveals to the public in his media interview "<u>IN 2018</u>" NEWLY DISCOVERED EXCULPATORY EVIDENCE OF BLOOD STAINED TENNIS SHOES he claims belonged to the Petitioner which he failed to introduced to the jury at trial in 1995;

    (2)  This exculpatory material evidence is favorable to the Petitioner because as the prosecutor and the Court of Appeals "OPINIONED" that the victim "RAN" and that the Petitioner "FOLLOWED". The jury was left with the impression that both the victim and the Petitioner were barefooted or that ALL THE EVIDENCE was before them. The claim that the Petitioner "FOLLOWED" in armed pursuit shows "INTENT" by the Petitioner to do harm to the victim according to the prosecution. The prosecutor further claims the Petitioner "STEPPED" on the victim's blood with those tennis shoes. And if so, why were the shoes not MATERIAL enough to be introduced as evidence to the jury who would decide if the Petitioner intended to do harm to the victim.

And if not, then whose blood are on those tennis shoes?
(3) The [REQUIRED ELEMENT] of the Penal Code §19.02 of
"INTENT" to do harm to the victim by the Petitioner
must be proven.  The State did not present any witnesses
who witnessed the Petitioner "INTENTIONALLY" shooting
the victim **INSIDE** the room.  Given the nature of the
prosecutor of withholding evidence, there is a reasonable
probability that an [EFFECTIVE DEFENSE] would have
been successful had this new exculpatory material
evidence been introduced at trial and that a jury
confronted with such mitigating evidence would have
returned with a different verdict, at least [ONE JUROR]
would have struck a different balance.

A prosecutor violates the Due Process Clause of the 14th
Amendment when he or she fails to disclose exculpatory material
evidence that is favorable to the accused.  **THOMAS V. STATE**,
841 S.W. 2d 399, 404 (Tx.Cr.App. 1992).  The Supreme Court in
**WEARRY V. BURL CAIN**, 577 U.S. (2016) stated that the prosecutors
failed to disclose evidence that could have helped the defense
and violated his due process rights... The Petitioner argues
that in her case the same has happen with the prosecutor
withholding evidence such as (1) impeachment evidence from a
state witness of her criminal records and (2) material evidence
of the victim's shoes and just as **WEARRY'S** due process rights
were violated, the Petitioner's due process rights were also
violated.  A prosecutor has an "AFFIRMATIVE DUTY" to disclose
"ALL MATERIAL", exculpatory evidence to the defense.  **LAGRONE
V. STATE**, 942 S.W. 2d 602, 615 (Tx.Cr.App.) cert. denied 139
L.Ed.2d 235, 188 S.Ct. 305 (1997).  Evidence qualifies as
material when there is "any reasonable likelihood" it could have
"affected the judgment of the jury".  **NAPUE V. ILLINOIS**, 360
U.S. 264, 271 (1959).  The Supreme Court in **WEARRY** stated that
**WEARRY** can prevail even if...the undisclosed information may

not have affected the jury's verdict.  The Petitioner claims
that the undisclosed evidence may not have affected the jury's
verdict but could have prevailed.  The Petitioner had the
constitutional right to [ALL] and [ANY] exculpatory material
evidence and the prosecutor denied her this right by withholding
not only impeachment evidence but also this newly discovered
evidence of the victim's shoes and cap, that were in the
prosecutor's possession and then using deceptive representation
of the shoes to the media and the public inciting sedition against
the Petitioner.

Rule 401 of the Federal Rule of evidence states that relevant
evidence is evidence having any tendency to make the [existence
of any fact] that is of consequence to the [determination] of
the action more probable or less probable then it would be without
the evidence.  Certainly, the tennis shoes that the prosecutor
willfully withheld are of consequence and is relevant to the
alleged accusation against the Petitioner that she "FOLLOWED"
the victim intending to do her intentional harm.  This alone
could have affected the minds of the jury.  Had the shoes proven
the contrary of "INTENT", there is a reasonable probability that
the results could have been different.  The Petitioner alleges
violations of her Due Process Rights under BRADY and of her
Sixth Amendment Right to effective assistance of counsel.

The Petitioner contends that her defense counsel failed
to provide effective assistance of counsel when it failed to
introduced to the jury the state's preservation of evidence,
failed to object to the state's exclusion of exculpatory physical

-18-

material evidence and erroneously demonstrated a deficient
performance that prejudiced the Petitioner's defense.  The
prosecution in their answer to Petitioner's Writ stated that
the shoes were "KNOWN" as if it was the defense's burden to go
looking for the evidence that would or would not convict his
client.  The Petitioner argues that had the prosecutor not done
his "MARCH 16, 2018" media interview, the revelation of the New
material exculpatory evidence of the "TENNIS SHOES" would have
remained mysteriously hidden.  For the State to undermine
Petitioner's argument in her 2019 State Writ of Habeas Corpus
a "an imaginary trial where the State, operating under a mistaken
belief that they were her shoes, relies upon that evidence to
meet its burden to prove her intent to kill", the State egregiously
dismisses that facts are stubborn, but to the State that didn't
matter.  In our country, trials are not conducted by imagination,
but by stubborn facts.  The Petitioner presents to this Court
facts that question the validity of her conviction of what was
and was not presented at trial by the prosecution and grave
misdeeds that played into the conviction of the Petitioner in
addition to withholding exculpatory and impeachment evidence:

    (1)  The Court of Appeals "OPINIONED" that the "...
          Petitioner shot Complainant, Selena Quintanilla Perez,
          in the back as Complainant walked toward the door or
          Petitioner's room".  This indicates that the shooting
          occurred inside, not outside.  This is why the
          importance of the shoes matter;
    (2)  The prosecutor, Mr. Valdez, presented evidence of the
          trail of blood he states the victim left behind as
          she ran 130 yards (390 feet) from the room to the
          front lobby of the motel;
    (3)  The prosecutor, Mr. Valdez, in his published book
          "JUSTICE FOR SELENA" states that a HOLLOW POINT BULLET
          [BULLETS THAT WERE PRESENTED AS EVIDENCE IN THIS

INSTANT CASE] are used to "**STOP AN AGGRESSOR**".  If this is the case, it didn't stop the victim as she "RAN" according to him.  This is why it is and was important for the upper clothing of the victim to be submitted to the medical examiner's for his evaluation.  It was not;

(4)   The "WITHHOLDING" of the victim's shoes (i.e. White Reebok Tennis Shoes) are of a great . consequence because if it is as Mr. Valdez claimed in his March 16, 2018 interview that the Petitioner "STEPPED" on victim's blood as she followed the victim, then "INTENT" would have been proven or disproven.  For 23 years, the jury nor the defense knew that such shoes existed;

(5)   In his media interview, (paraphrasing Mr. Valdez), he claimed that the "**EXERTION**" that the victim sufferred post right perforated subclavain artery injury was what killed the victim.  Had the "tennis shoes" been presented as evidence, they could have proven the extend of the victim's blood loss as an artery injury would have produced an enormous amounts of blood profusing out of the victim into her shoes.  The jury never got to deliberate this crucial evidence;

(6)   The Petitioner's defense was one of an accident.  The Court of Appeals adds credance to this defense when it stated in its "OPINION" that the victim "SHOT ...AS COMPLAINANT...WALKED TOWARD THE DOOR OF THE... ROOM".  The State presented no witnesses who witness the Petitioner "INTENTIONALLY" shooting the victim inside the room;

.(7)   By withholding the "tennis shoes" from the jury, it lends to the suspicion that the "UPPER CLOTHING OF THE VICTIM" (i.e. green sweat shirt) crucial to the determination of the distance, direction, size and type of bullet that struck the victim was deliberately destroyed;

(8)   Rosario Garza, a State witness, gave a police statement stating that she heard 2 big bangs.  This witness was **NOT** called to testify at trial;

(9)   The weapon that was introduced at trial, was tested in the lab to have been fired only ONCE;

(10)  No fingergprints were lifted from the weapon;

(11)  No one examined the Petitioner's hands for gun powder;

(12)  No bullet or casings were found at the crime scene, inside or outside of the room, even though the victim had an entrance and exit wound;

(13)  In 2000, the prosecutor, Mr. Valdez, requested and was granted permission to "DESTROY" the weapon introduced at trial despite Petitioner's urging not do so as she had pending appeals;

(14)  The prosecutor, Mr. Valdez, had the "tennis shoes" all of these years, yet sought not to destroy them as he did with the weapon and the victim's upper

clothing (i.e. green sweat shirt);

(15)   The prosecutor, Mr. Valdez, used the motive of embezzlement, fruit of the poisonous tree, to convict the Petitioner even after he stated to the Court he had no intention of pursuing charges against the Petitioner for lack of evidence.

The Petitioner, finally, argues that since the Court of Appeals ruled in this instant case that the "IMPEACHMENT EVIDENCE" that the Petitioner was entitled to, begs the question: Why would the EXCULPATORY MATERIAL EVIDENCE not be entitled to the Petitioner? If the shoes were so important to the crime that Mr. Valdez, the prosecutor, withheld them for 23 years and didn't destroy them and then present them to the public but not the jury, then it is just as important that the Petitioner be given the opportunity to refute such evidence. The Petitioner asserts that the prosecutor is a self-serving prosecutor who breached its affirmative duty to disclose to the defense and more importantly to the jury who ultimately decided the fate of the Petitioner. Prosecutors with such behaviors should be deterred from wrongdoing against the Petitioner if nothing is done to restore the rights of the Petitioner and/or against another defendant. For the reasons stated in this Motion, the Petitioner asserts that pursuant to 28 U.S.C. §2244(b)(2)(B)(i) she claims that the factual predicate for the claim could not have been discovered previously through the exercise of due diligence and the facts underlying the claim, if proven by clear and convincing evidence, would be sufficient to establish that, but for constitutional error, a reasonable trier of fact would not find Petitioner guilty of the underlying offense.

The Petitioner informs this Honorable Court that after many requests to the State convicting court to obtain her trial record, the convicting court was uncooperative in this matter as the Petitioner repeatedly requested their cooperation. The Petitioner was forced to file a Writ of Mandamus to the State Court of Criminal Appeals in 2012. After an order from the Court of Appeals, the convicting court provided the Petitioner with [SOME] but not all of her record. To obtain the rest of her trial record, a second Writ of Mandamus had to be filed in 2018 to obtain an answer from the convicting court as to the whereabouts of the rest of her trial record. Again the Court of Criminal Appeals filed an order and the convicting court responded. For this reason, the Petitioner was delayed in filing a State Writ of Habeas Corpus and the filing of this Motion for a Certificate of Appealability.

### CONCLUSION AND PRAYER

WHEREFORE, the Petitioner requests that this Court grant
Petitioner a certificate of appealability to file a second or
successive 28 U.S.C. §2254 Federal Writ of Habeas Corpus.


Respectfully Submitted,

*Yolanda Saldivar*

YOLANDA SALDIVAR
TDCJ #733126
Mountain View Unit
2305 Ransom Rd.
Gatesville, Texas 76528


### CERTIFICATE OF SERVICE

I, Yolanda Saldivar, do hereby certify that the foregoing
documents are true and correct and mailed via regular mail through
the Texas Department of Correction Mountain View Unit mailroom
to The United States Court of Appeals for the Fifth Circuit,
600 S. Maestri Place, New Orleans, LA 70130 on _____9th_____ day
of _____October_____ , 2019.

*Yolanda Saldivar*
_____
YOLANDA SALDIVAR, Petitioner



United States Court of Appeals
7th Circuit
Office of the Clerk, Ms. Friedrich)
600 S. Maestri Place
Suite 115
New Orleans, LA 70130

Yolanda Saldivar
#758126
Mountain View Unit
2305 Ransom Rd.
Gatesville, TX 76528